UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

IN RE:

BENJAMIN ALAN MORTENSEN                        Chapter 7

    Debtor.                                  Bankruptcy No. 07-03965

LITTLE FAMILY FARMS CORPORATION

    Plaintiff

vs.                                            Adversary No. 08-30042

BENJAMIN ALAN MORTENSEN

    Defendant.

### DECISION RE DISCHARGEABILITY

The matter before the court is the final trial of the complaint to determine dischargeability under 11 U.S.C. § 523(a). Trial was held November 3, 2008 in Des Moines. Plaintiff Little Family Farms Corporation ("Little Family") was represented by attorney Michael P. Mallaney. Jerrold Wanek appeared as attorney for defendant Benjamin Mortensen. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### Findings of Fact

Little Family's claim arises out of an agreement between the parties to build residential homes in Dallas Center, Iowa. Luke Little, age 73, is the president of Little Family, which is engaged in grain farming. Mr. Little has approximately three years of college education. He worked for IBM for 18 years, ending in 1980. From that date until the end of 1989 he did

computer engineering for Unisys. Then he and another individual formed Sequel Corporation, a business that rebuilt and repaired computer disk drives. In 1993 he moved back to Iowa to work in the family business.

Mr. Little is a personal acquaintance of Mortensen's mother, Sylvia Miller. In the summer of 2005, when the parties first began discussing the idea of a housing development, Mortensen was operating his own plumbing business and doing home construction. Mortensen formed Mortensen Construction, L.L.C. in late 2006. Prior to the project with Little Family he had constructed fewer than a dozen homes. During 2006, he constructed only one home in addition to the work he did on the Little Family project.

Little Family owned 67 acres of farmland in the city limits of Dallas Center. The idea for the housing development was to build homes modeled somewhat after those built in the 1930s. When the development was approved by the city of Dallas Center, construction of the homes had to satisfy a number of covenants involving style. One of such features was the location of the garages in the back of the house, with access through an alley.

On or about February 24, 2006, the parties met at the home of Sylvia Miller. Present were Luke Little, his wife Janice Little, his son Paul Little, Benjamin Mortensen, and his then-wife Kim Mortensen. The idea for the project was that Little Family would construct the infrastructure for the development and that Mortensen or Mortensen Construction, L.L.C. would build the houses. Luke Little had obtained estimates from construction

firms for putting in the infrastructure for the development, which would contain 31 houses.  Mortensen immediately expressed interest in the project, and the parties orally agreed to proceed.  Luke Little entered into a contract with McAninch Corporation to put in the infrastructure.

Mortensen was involved in the process of meeting with city officials for approval of the development project.  By May 2006, the lengthy process of platting the 67 acres and installing the infrastructure had not been completed.  In order to be able to begin construction, Little Family purchased three lots in Dallas Center that had already been platted and that could be included in the development project.  Two of Little Family's lots on Sycamore Street had been platted by August 2006.  Mortensen did construction work on the three lots, which are legally described as follows:

> Lot 29 in the Neighborhood of Dallas Center Plat 1, an Official Plat, now included in and forming a part of the City of Dallas Center, Dallas County, Iowa;
>
> Lot 30 in the Neighborhood of Dallas Center Plat 1, an Official Plat, now included in and forming a part of the City of Dallas Center, Dallas County, Iowa; and
>
> Lot 69 in Meadow View Acres Plat One, an addition in the town of Dallas Center, Dallas County, Iowa.

The lots are locally known as 518 Sycamore Street (Lot 29), 520 Sycamore Street (Lot 30), and 704 Fair View Drive (Lot 69), Dallas Center, Iowa.

The parties had discussed construction financing at their February 2006 meeting.  Luke Little expected that Mortensen would

3

obtain a construction loan.  In the first half of June 2006, Little proposed that Little Family could provide financing to get the project started.  Little Family obtained a $1 million line of credit from Wells Fargo Bank that was secured to the extent of approximately $500,000 by a mortgage on one of the corporation's farms.  Little Family made advances to Mortensen in increments of $100,000 on June 23, August 1, October 31, and December 6, 2006, and January 3, 2007, for a total of $500,000.  Mortensen was to pay Little Family the same interest rate charged by Wells Fargo.

The advances were deposited in an account opened June 8, 2006, in the name of "Ben Mortensen dba Mortensen Construction" at Raccoon Valley Bank, Perry, Iowa, account no. 6106447 ("Project Account").  Authorized signers on the account were Ben and Kim Mortensen, and Luke, Janice and Paul Little.  Kim Mortensen kept the books for the Little Family project using accounting software.

Little viewed these advances as a "bridge loan" for the purpose of getting the project started until Mortensen obtained his own construction financing.  Mortensen said he believed that Little Family was financing the construction.  Mortensen said he knew the money was a construction loan, but he did not believe that it was improper to use the funds for other expenses.  He said he thought of the money as a loan that would have to be repaid as the houses were sold.  He expected the selling price for each house would be close to $400,000.  The prices of the lots were in the range of $42,000 to $60,000.

The court finds that the oral agreement between the parties was that the money was a construction loan to be used only for building houses in the Little Family project.  When the houses were sold, Mortensen was to repay the loan and pay for the lots. The agreement did not contemplate that Mortensen would receive a salary or draw, but rather that he would receive the builder's profit from the proceeds of sale.

The first construction began in July 2006 on Lot 69 at 704 Fair View Drive.  Foundation work on the two Sycamore Street properties began some months later.  From approximately late August 2006 until May 2007, Luke Little and Mortensen had fairly regular weekly meetings to discuss the progress made and major expenses incurred during the previous week and the progress and expenses anticipated for the coming week.  The two would discuss when additional funds were needed.  Luke Little did not insist on receiving invoices for monies already spent before advancing new funds.

In February 2007, Mortensen obtained a construction loan from Community State Bank in the amount of $208,000 for construction at 518 Sycamore Street.  Little Family agreed to pledge that lot to secure the loan.

Beginning in about September 2006, Luke Little was concerned that the construction was not progressing quickly enough.  Mortensen felt that he was unable to do his job because of Little's desire to make decisions about details.  Mortensen was unhappy with the way the houses were being marketed.  At some

5

point the working relationship between Luke Little and Mortensen broke down. After January 2007, Little Family decided not to advance any more funds into the Raccoon Valley Bank account. When Mortensen stopped work on the project, the 704 Fair View house was completed except for closet shelving and installation of a central vacuum system. Mortensen said the Sycamore Street houses had "mechanicals roughed into the walls, but they had not been drywalled."

In July 2007, the parties executed an Agreement and Partial Release. Exhibit 4. The agreement was between Little Family as "Owner," Mortensen Construction, L.L.C. as "Contractor," and Benjamin Mortensen and Kimberly Mortensen, the members and managers of the contractor. The agreement recited that the Contractor had agreed to construct a home on each of the parcels at 518 Sycamore Street, 520 Sycamore Street, and 704 Fair View Drive. The parties agreed that the Contractor had not made satisfactory progress with construction of any of the houses and that none had been completed. Article I of the agreement provided for these mutual releases:

> A. <u>Release by Contractor</u>. Contractor and Mortensens hereby release and hold harmless Owner and its successors and assigns from any obligation of Owner to make any payment or reimbursement to Contractor or Mortensens, and any other claims, whether legal or equitable, that Contractor or Mortensens may have against Owner with respect to the construction of the Homes.
>
> B. <u>Partial Release by Owner</u>. Subject to the limitations set forth in this Agreement, Owner hereby releases and holds harmless Contractor and its successors and assigns from Contractor's obligations to

    perform any construction, building, finishing, or repairing of any of the Homes from the date of this Agreement.

Exhibit 4.  The release did not release Mortensen individually.

    Article III, titled "Invoices" provided as follows:

        Contractor shall, on the date of this Agreement, provide to Owner all invoices and receipts with respect to the construction of any of the Homes.  Contractor shall be responsible for paying all such invoices and receipts, with the exception of the following, which shall be timely paid by Owner:

        A. Any invoice or receipt for a total of one (1) fireplace;

        B. Any invoice or receipt for a total of two (2) slider doors; and

        C. Any invoice or receipt for the payment of an amount not exceeding Eight Thousand Two Hundred Dollars ($8,200.00) to any Menards home-improvement store.

A handwritten notation under paragraph C stated: "An Invoice to Crouse Construction for $4,400.00."  After obtaining bank records from the Project Account, Little Family decided did not pay the $8,200 amount.

    In accordance with the July 2007 agreement and release, Little Family paid $190,414.23, the balance owing on the construction loan from Community State Bank for construction at 518 Sycamore.  A release of mortgage was filed with the Dallas County Recorder.  The Raccoon Valley Bank account was closed, and the balance in the account, $339.72, was turned over to Luke Little.  Little Family agrees that the Mortensens have fully complied with their obligations under the Agreement and Partial Release.

Little Family took over construction of the three houses, which are now ready to be marketed. None had been sold as of the date of trial. Little Family did not present any evidence of the value of the houses at the time it took them back.

Shortly after the execution of the Agreement and Partial Release, Kim Mortensen provided two lists itemizing estimated expenses for construction at 518 Sycamore and 704 Fair View. The total for 518 Sycamore was $189,744 and the total for 704 Fair View was $288,089. Exhibit C. Mortensens provided invoices to substantiate, in part, the expenses. Mortensen also identified construction expenses that had been paid from another bank account. The total of all invoices, including the expenses paid from another account, is $290,779.

Little Family obtained records for the Project Account, which are summarized in Exhibit 1. Disputed expenses fall into three categories. First are amounts taken for restaurant meals, beauty salons, grocery stores, hotels and a cruise. Restaurant expenses ranged from $10.13 at McDonald's to $91.03 at a Japanese restaurant. A purchased restaurant meal might have facilitated progress of the construction. There was no evidence as to whether the construction funds could properly be used for meals. Some stores, such as Target and Walgreens, carry a wide variety of merchandise. There is not enough evidence for the court to say whether these expenses were improper. The court finds, however, that the expenses at beauty salons and for travel could not have been related to the construction project. These

8

expenses are shown in the bank records as follows:

|  |  |  |
|---|---|---|
| 08/24/06 | Sally Beauty | $    62.65 |
| 09/11/06 | Salon Bliss | $    85.97 |
| 09/27/06 | Doubletree Minneapolis | $   126.74 |
| 10/16/06 | TROP-Rooms Las Vegas | $   219.04 |
| 01/19/07 | Carnival Cruise | $   770.61 |
| 02/15/07 | Carnival Cruise | $1,500.00 |
| 02/15/07 | Flamingo Hilton (2 charges) | $   327.00 |
| 04/11/07 | Delta Air | $   135.80 |
| 04/11/07 | Expedia (2 charges) | $    10.00 |
| Total |  | $3,237.81 |

The court finds Mortensen's explanation that a bank error caused the Flamingo hotel charges to be debited from the Project Account unconvincing.

A second category of disputed expenses includes construction expenses paid to third parties that are not substantiated by an invoice identifying one of the properties in the Little Family project. For example, on July 26 and August 10, payments totaling $35,000.00 were made to HSBC Business Solutions, the account management firm for Menards. Little Family contends that the money likely paid an outstanding bill for construction in Urbandale. Mortensen applied for a building permit for the Urbandale house on July 11, 2006. Mortensen said the money paid to HSBC may have been used to order lumber items, such as trusses, that had to be prepaid. He estimated that the cost of trusses for one house would exceed $20,000. He said there were many expenses for which there was no invoice. In one situation, Mortensen traded plumbing work for an entire house for excavation, rock delivery and basement work on the three Little Family project properties. The court finds and concludes that

9

Little Family has failed to show that undocumented construction expenses unrelated to the project were paid with misappropriated funds. It seems as likely that Mortensen is unable to match expenses with invoices identified to the Little Family project because of poor record-keeping.

The third category of disputed expenses includes payments or transfers to Mortensen himself, Mortensen Plumbing LLC, Mortensen Construction, or to other accounts. The bank records show these transactions:

| | |
|---|---:|
| Checks made payable to Ben Mortensen | $ 29,844.00 |
| Checks to Mortensen Construction | $ 19,205.85 |
| Checks to Mortensen Plumbing, LLC | $ 31,000.00 |
| Transfers to account 6106676 | $ 50,000.00 |
| Cash withdrawals | $  4,330.50 |
| Total | $134,380.35 |

Exhibit 1. Mortensen said that these checks and transfers were for his convenience in paying bills. Several of his cash transactions were for taking construction debris to the landfill.

Little Family did not put in evidence the bank records for small business checking account no. 6106676, which Mortensen identified as an account in the name of Mortensen Plumbing. Mortensen also had an account in the name of "Benjamin A. Mortensen, dba Mortensen Construction" at First Bank, West Des Moines, small business account no. 43567. Statements covering January through September 2007 were included in Exhibit 17 at pages 3 to 24. This account was used for both business expenses and household expenses. It does not appear that any funds from the Project Account were transferred to account no. 43567 between

10

January and September 2007. There were no other bank account records in evidence.

Having no bank records to show otherwise, the court will assume that the transfers and checks to Mortensen's business accounts were used for construction expenses. Little Family has not shown that funds going through the business accounts were misappropriated. The existence of the business accounts, however, creates an inference that the checks payable to Ben Mortensen individually were not used for construction expenses. The court has found that the contract with Little Family did not permit Mortensen to take draws for salary. The court finds that the checks totaling $29,844.00 were misappropriated funds.

Mortensen filed his chapter 7 bankruptcy petition on November 19, 2007.

## Discussion

Little Family contends that its claim against Mortensen is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) or 523(a)(6). The creditor bears the burden of proving each of the elements of a nondischargeability claim by a simple preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654 (1991); Lindau v. Nelson (In re Nelson), 357 B.R. 508, 513 (B.A.P. 8th Cir. 2006).

## 11 U.S.C. § 523(a)(2)(A)

Bankruptcy Code § 523(a)(2)(A) provides that a Chapter 7

discharge does not discharge any debt for money obtained by false pretenses, a false representation, or actual fraud.  Little Family argues that Mortensen obtained the construction loan funds through the false representation that the money would be used only for the construction of the houses in the Little Family project.  The court has found that the agreement was that the money would be so used.

To establish that debt is nondischargeable under § 523(a)(2)(A), the creditor must prove that--

    (1) the debtor made a false representation;
    (2) at the time the representation was made the debtor
        knew it was false;
    (3) the debtor subjectively intended to deceive the
        creditor at the time he made the representation;
    (4) the creditor justifiably relied upon the
        representation; and
    (5) the creditor was damaged.

Thul v. Ophaug (In re Ophaug), 827 F.2d 340 (8th Cir.1987), as supplemented by Field v. Mans, 516 U.S. 59, 116 S.Ct. 437 (1995); Blue Skies, Inc. v. Preece (In re Preece), 367 B.R. 647 (B.A.P. 8th Cir. 2007).

A promise to perform a future act is an actionable representation only when made with an existing real intention not to perform.  Hagarty v. Dysart-Geneseo Comm. School District, 282 N.W.2d 92, 95 (Iowa 1979); Grefe v. Ross, 231 N.W.2d 863, 867 (Iowa 1975).  The breach of an agreement does not in itself establish that the promisor had no present intention to keep the promise.  Magnusson Agency v. Public Entity Nat'l Co.-Midwest, 560 N.W.2d 20, 28 (Iowa 1997).

12

The court finds that the evidence is insufficient to find that Mortensen obtained the construction loan by making a false representation. The claim under § 523(a)(2)(A) will be dismissed.

## 11 U.S.C. § 523(a)(4)

A Chapter 7 discharge does not discharge debt for embezzlement or larceny. 11 U.S.C. § 523(a)(4). Little Family argues the two claims alternatively, conceding that they are inconsistent claims. Larceny is the wrongful taking of property from the rightful owner with fraudulent intent to convert the property to the debtor's own use. Kaye v. Rose (Matter of Rose), 934 F.2d 901, 903 (7th Cir.1991); Dynamic Food Service Equipment, Inc. v. Stern (In re Stern), 231 B.R. 25, 26 (S.D.N.Y.1999). Embezzlement is the "fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come." First National Bank of Fayetteville, Arkansas v. Phillips (In re Phillips), 882 F.2d 302, 304 (8th Cir.1989). The funds at issue were deposited into a bank account in Mortensen's name. He was authorized to use the funds in the construction of the Little Family homes. Therefore, the claim of larceny will be dismissed, and the § 523(a)(4) claim will be analyzed under the theory of embezzlement.

The agreement that resulted in creation of the Project Account created particular obligations on Mortensen that made his discretionary use of the funds improper. See In re Belfry, 862

13

F.2d at 663 (distinguishing case where debtor became owner of money).  Mortensen knew that the Project Account funds were to be used only for construction of the Little Family houses.  The court does not believe his explanation that he thought the contract permitted him to take draws for salary.  Mortensen knowingly misused funds for personal purposes.  Mortensen did not voluntarily provide an accounting for expenses, and when Luke Little continued to advance funds without insisting on receiving one, Mortensen took advantage of the situation.

The court has found that the following expenses, which are undisputedly unrelated to the project, were misappropriated from the Project Account:

| Date | Description | Amount |
|---|---|---|
| 08/24/06 | Sally Beauty | 62.65 |
| 09/11/06 | Salon Bliss | 85.97 |
| 09/27/06 | Doubletree Minneapolis | 126.74 |
| 10/16/06 | TROP-Rooms Las Vegas | 219.04 |
| 01/19/07 | Carnival Cruise | 770.61 |
| 02/15/07 | Carnival Cruise | 1,500.00 |
| 02/15/07 | Flamingo Hilton (2 charges) | 327.00 |
| 04/11/07 | Delta Air | 135.80 |
| 04/11/07 | Expedia (2 charges) | 10.00 |
| Total | | $3,237.81 |

In addition, the court has found that Mortensen misappropriated $29,844 by writing checks to himself individually.  The court concludes that these sums, which total $33,081.18, were embezzled from the account.  This debt should be excepted from his discharge under § 523(a)(4).

### 11 U.S.C. § 523(a)(6)

Debt for willful and malicious injury is excepted from a

14

debtor's discharge pursuant to 11 U.S.C. § 523(a)(6). Proof of willful and malicious injury requires more than a showing of intentional conduct that causes injury. Plaintiff must prove that debtor intended the injury. <u>Kawaauhau v. Geiger</u>, 523 U.S. 57, 118 S.Ct. 974 (1998). The mere violation of legal rights is not enough to show malice. <u>Osborne v. Stage (In re Stage)</u>, 321 B.R. 486, 493 (B.A.P. 8th Cir. 2005)(citing <u>Barclays American/ Business Credit, Inc. v. Long (In re Long)</u>, 774 F.2d 875 (8th Cir. 1985)). The Eighth Circuit's standard for proof of malicious injury requires an intent to cause harm "at least in the sense that the debtor's tortious conduct was certain or almost certain to cause harm." <u>In re Stage</u>, 321 B.R. at 493. The resulting harm suffered by the creditor must be a "loss or detriment in fact" to come within § 523(a)(6). <u>Id.</u> (quoting Restatement (Second) of Torts § 7(2) definition of harm as distinguished from injury). Although the court finds Mortensen acted with intent to injure (his act was willful), I find and conclude that Little Family has failed to prove that Mortensen acted with intent to harm; it has failed to prove malice.

## Attorney Fees

In closing argument, counsel for Little Family argued that plaintiff would be entitled to a damage award for attorney fees if it prevailed on its conversion claim. Plaintiff has offered no authority for awarding attorney fees as part of a conversion claim in dischargeability litigation. The request for attorney

fees will be denied.

ORDER

IT IS ORDERED that plaintiff's claims under 11 U.S.C. § 523(a)(2)(A), for larceny under § 523(a)(4), and under § 523(a)(6) are dismissed.

IT IS FURTHER ORDERED that Little Family Farms Corporation shall recover from Benjamin Mortensen the sum of $33,081.18. This sum is excepted from his bankruptcy discharge as debt for embezzlement pursuant to 11 U.S.C. § 523(a)(4). Judgment shall enter accordingly.

DATED AND ENTERED  March 17, 2009

*(signed)* William L. Edmonds

William L. Edmonds, Bankruptcy Judge